```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF TENNESSEE
        NASHVILLE DIVISION

LEANN DAVIS,                      )
                                  )
        Plaintiff,                )
                                  )
    v.                            )    CASE NO. 3:04-0790
                                  )    JUDGE ECHOLS
FORD MOTOR CREDIT COMPANY,        )
                                  )
        Defendant.                )
```

## MEMORANDUM

Pending before the Court is Defendant Ford Motor Credit Company's Motion for Summary Judgment (Docket Entry No. 7) to which Plaintiff Leann Davis has responded in opposition (Docket Entry No. 18). For the reasons that follow, Defendant's motion will be granted.

## I. PROCEDURAL BACKGROUND

This case was originally filed on July 30, 2004, in the Chancery Court for Williamson County, at Franklin, Tennessee, against Defendants alleging unlawful employment discrimination in that Defendants failed to adequately accommodate Plaintiff and she was constructively discharged based solely upon a physical handicap in violation of the Tennessee Handicap Act and the Tennessee Human Rights Act, Tennessee Code Annotated, Sections 40-21-311(d) and 8-50-103. Plaintiff seeks compensatory damages, including back pay, damages for embarrassment, humiliation and mental anguish, the value of lost benefits and front pay if she is not reinstated to her former position or in a comparable position. (Docket Entry No. 1, Exh. 2). Plaintiff filed a Notice of Voluntary Dismissal

1

Without Prejudice in Chancery Court on August 26, 2004, dismissing all Defendants except Ford Motor Credit Company. (Docket Entry No. 1, Exh. 3).

On September 2, 2004, Defendant Ford Motor Credit Company removed the case to this Court on grounds of diversity of citizenship since Plaintiff's request for damages exceeds $75,000.00.[1] Defendant now moves for summary judgment, asserting that reassigning Plaintiff from a temporary position to a position commensurate with her medical restrictions did not constitute a constructive discharge and there is no evidence in the record that would support a claim that Defendant failed to accommodate Plaintiff's disability.

## II. FACTS

The facts are construed in Plaintiff's favor as follows. Defendant Ford Motor Credit Company ("FMCC") has a facility which is known as PRIMUS and which "takes care of leases." (Def. SOF, ¶¶ 1-2[2]). Employees at the PRIMUS facility are responsible for collecting automobile lease payments. Additionally, some employees do collection work when payments on the leases are delinquent. (Id. ¶ 2).

---

[1]Plaintiff is a resident and citizen of the State of Tennessee. Defendant is a Delaware corporation with its principal place of business in Dearborn, Michigan. Therefore, complete diversity exists among these parties. See 28 U.S.C. § 1332(c)(1); Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999) ("Diversity of citizenship . . . exists only when no plaintiff and no defendant are citizens of the same state.").

[2]Defendant's statement of undisputed material facts is cited as "Def. SOF," whereas Plaintiff's statement is cited as "Pf. SOF."

2

Plaintiff Leann Davis ("Plaintiff" or "Davis") first became employed at the PRIMUS facility via temporary employment through Kelly Services. Davis became a full-time FMCC employee in April 1997. (Id. ¶¶ 1 & 3).

Davis was initially employed as a "compass admin" at a salary grade of 4. (Id. ¶ 4).[3] She was subsequently moved into a "network admin" position at a salary grade of 5. (Id. ¶ 5).

In January 2001, Davis' department was downsized and her position was eliminated. (Docket Entry No. 9 at 2; Docket Entry No. 7, Exh. A at 27-28). As a result, Davis was placed in the mail room as a temporary assignment and was supervised by Darrell Downs, who was also transferred to the mail room as a result of his position being eliminated. This placement led to no loss of salary. Even though the grade for the mail room position was 1, Davis was paid at a level 5 because FMCC had a program whereby employees were given two years of salary protection if their positions were eliminated. (Def. SOF ¶¶ 6-8).

Prior to moving to the mail room, Davis spoke with her supervisor, Mr. Downs, and the manager, Paul Pitzer, to explain her physical restrictions. While not under any formal medical restrictions, Davis explained she had undergone two surgeries on her back and she had problems "picking up weight." She also said

---

[3]In her deposition, Davis explained that a "compass admin" position is similar to a network technician's job. In that position, she would help customers who were having problems with the software on their computer. (Davis Depo. at 14).

3

she had problems sitting and standing. (Id. ¶ 9; Docket Entry No. 7, Exh. A at 36-37).

Because sitting in traffic and utilizing the clutch in her car caused pain, Davis asked to be allowed to work from 6:00 a.m. to 3:00 p.m. The request was granted even though the normal hours for the mail room were from 7:00 a.m. to 5:00 p.m. (Id. ¶¶ 9-10).

Personnel in the mail room were responsible for collecting mail from the post office. They were also responsible for sorting checks to be delivered to the cash handling area, sorting mail, and delivering and picking up mail throughout the facility. (Id. ¶ 10).

Once in the mail room, in addition to sorting mail and processing checks, Davis was assigned special projects that involved creating and working on various spreadsheets using a computer. Davis also created a process whereby FedEx and UPS packages could be scanned in, and she developed a process to help sort mail into various buckets. Davis did not push mail carts because of their weight. (Id. ¶ 11).

Davis suffers from spondylosndesis,[4] a degenerative back disorder. (Pf. SOF ¶ 34). Because of her back problems, FMCC had purchased an ergonomic chair for her which she was allowed to bring to the mail room. (Def. SOF ¶ 12). When her supervisor, Debbie

---

[4]Davis also claims she had "carpal tunnel problems" in the past and this was known by Debbie Ervin, her supervisor. (Davis Depo. at 122).

4

Ervin ("Ervin"),[5] noticed Davis was pushing her chair from one work station to another, FMCC bought a second ergonomic chair for Davis' use in the mail room. (Id. ¶ 12).

Not long after being assigned to the mail room, Davis underwent foot surgery because of a bone spur. Because Davis had to stand while sorting mail, her doctor recommend she wear sneakers to help ease the pain and discomfort. Davis was allowed by FMCC to wear sneakers in the mail room. (Def. SOF ¶ 13).

Shortly after her foot surgery, Davis confronted Ervin and told her she thought her co-workers were finding out about her medical conditions from Ervin. According to Davis, Ervin did not respond to these allegations. (Pf. SOF ¶ 35).

Some time around August 2002, Davis was given medical restrictions because of her back. At first, she was only allowed to lift up to five pounds. Later the limit was reduced to three pounds. (Def. SOF ¶¶ 19 & 21). Because of the weight restrictions, Davis could not pick up mail from the post office, sort mail buckets and trays, push mail carts or handle big packages. (Davis Depo. at 61). Additionally, Davis could not do the meter mail because that mail was stacked in trays and the trays would weigh more than three pounds. (Davis Depo. at 62).

Davis contends that after receiving restrictions because of her back problems, Ervin treated her differently and told her she

---

[5] Davis' first supervisor in the mail room was Darrell Downs who, like Davis, had been placed in the mail room after his position was eliminated. Downs was eventually moved into the facilities department. (Def. SOF ¶¶ 14-16).

was not being a team player and on one occasion allegedly told her she was not a special person. (Pf. SOF ¶ 36). On another occasion, Davis claim she wanted to leave her work station to perform stretching exercises, but was told to return to her work station. (Id. ¶ 37). Davis also contends Ervin would joke about Davis' back problems in front of co-workers saying such things as "poor Leann, she always has problems." (Id. ¶ 38).

When Davis was placed on the five-pound lifting restrictions, her duties were further limited pursuant to a "Temporary Revised Work Flow Plan." (Docket Entry No. 7, Def. Ex. B). Davis was limited in the amount of time she would sort mail and was provided breaks so she could walk around the mail room. Davis was also to avoid picking up mail and lifting heavy objects. (Id. & SOF ¶ 22). During the time Davis worked in the mail room, there was never any accommodation which she asked for which was not provided. (Davis Depo. at 71).

Davis was "written up" by FMCC for poor attendance, including for times she was off due to foot surgery and treatment for her back. (Davis Depo. at 108). Nevertheless, Davis received good reviews for her work performance in the mail room. (Davis Depo. at 130-31).

FMCC began looking for other jobs within the company which Davis could perform in view of her restrictions, with or without accommodation. (Def. SOF ¶ 21). FMCC found a position for Davis in its collections department. Employees in that department spend

6

the majority of their day on the telephone and computer.  They also handle filing and other paperwork.  (Def. SOF ¶ 27).

FMCC planned to provide a special adjustable keyboard and monitor that would permit Davis to alternate between sitting and standing.  (Def. SOF ¶ 27).  The job would allow Davis to keep her pay rate and she would have been eligible for future pay increases and advancement in the company.  (Id.).

On August 1, 2003, Davis met with her supervisors and was informed about the position in the collections department.  She was also told to report for training the following Monday, August 4, 2003.  (Id. ¶ 28).

During the August 1, 2003, meeting, Davis asked how her restrictions would be accommodated in the collections department and was informed that she would be provided an adjustable keyboard. (Davis Depo. at 120).  Davis responded "[t]here's no way you can accommodate me with just a keyboard."  (Id. at 122).  Davis claims she repeatedly asked her supervisors to wait until after her next doctor's appointment on August 13, 2003, but that request was refused.  (Id. at 121).

Davis asserts she was then told she had to take the job, that it was for her own good, and that the only other option was the "door." (Id.).  After asking whether the new supervisors in the collections department knew about her restrictions, Davis claims she was told "no" and that it was up to her to tell them.  As for her prior "carpal tunnel problem," Davis alleges she was told it

7

was her problem and she would have to discuss that with the trainer and her new supervisor, as well. (Id. at 122).

Davis left the meeting, packed her up her belongings and exited the building. Ervin went with Davis to her truck and allegedly asked Davis to sign a paper saying she was quitting. Davis refused and reiterated her belief she was being forced out. Ervin then asked Davis to reconsider taking the position in the collections department but Davis told her she had nothing to reconsider because she was being forced from her job. (Davis Depo. at 125-128).

Davis did not speak with anyone within the collections department or look at the keyboard prior to making her decision to leave. Davis claims she was told no one was there at the time of the August 1, 2003 meeting to answer her questions. (Davis Depo. at 128-129). She also claims she called the company nurse on the Monday she was to report for training, but was unable to reach her. (Davis Depo. at 167-168).

After leaving her employment with FMCC, Davis has made no effort to find other employment. Instead, Davis claims she is focusing on her health. (Davis Depo. at 168).

### III. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the

8

initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### IV. ANALYSIS

In her Complaint, Davis contends she was constructively discharged from her employment in violation of the Tennessee Handicap Act ("THA"). Though not clear from the Complaint, it

9

appears that Davis may also be alleging that FMCC failed to accommodate her under the THA.

The THA prohibits workplace discrimination based on an employee's disability. The statute works in conjunction with the Tennessee Human Rights Act ("THRA") to provide a civil cause of action for discrimination based upon a handicap. See, Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000).

To establish a claim for disability discrimination under the THA, a plaintiff must show: (1) she was disabled; (2) she was qualified for the position; and (3) she suffered an adverse employment action because of that disability. Id. at 708. Because the THA is similar to the Americans With Disabilities Act ("ADA") courts may look to cases interpreting the ADA for guidance when presented with claims under the THA. Id. at 705.

**A.  Constructive Discharge**

The Sixth Circuit in Trepka v. Bd. Of Educ. Of Cleveland, 28 Fed.Appx. 455, 460 (6th Cir. 2002)(unpublished) summarized the analysis to be undertaking in cases alleging constructive discharge:

> [Plaintiff's] incantation of the words 'constructive discharge,' of course, is not sufficient to establish a cause of action because, absent explicit contractual provisions to the contrary, an employer may explicitly discharge any employee at will[.] Rather, conduct that forces an employee to quit, constituting "constructive discharge," is actionable only if the conduct is motivated by discriminatory intent against a protected employee characteristic. The discriminatory conduct must then make working conditions 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'. . .

10

> Indeed, simple proof of discrimination is not enough to convert an employee's resignation into an actionable constructive discharge. Instead, there must be, in addition, aggravating factors, constituting at least a continuous and severe pattern of discriminatory treatment.

Trepka, supra, 28 Fed.App. at 462-63 (internal citations and parenthetical omitted).

In this case, Davis has not shown any discriminatory intent, that the conduct of FMCC made her working conditions so difficult a reasonable employee in Davis' position would have felt compelled to resign, or that there was a continuous and severe practice of discriminatory treatment. Quite the contrary, the undisputed facts show that FMCC met every requested accommodation made by Davis when she worked in the mail room. When FMCC decided to transfer Davis to collections, a job with no reduction in pay, but with the potential for future pay increases and advances in the company, Davis chose to resign under the guise she was being "forced out." Davis did not even agree to go to training, discuss her new position and her limitations with her new supervisor, or attempt to do the tasks of her new position. Instead, she packed her belongings and left the building. When her supervisor followed her to the parking lot and asked her to reconsider, she refused and said she was being forced out.

"An employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged." Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002). "Instead, the employee is obliged 'not to assume the worst, and not jump to

11

conclusions too fast.'" Id. quoting, Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987); see also, Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 887 (6th Cir. 1996)(no adverse employment action where plaintiff assigned to new job "failed to make a real attempt to compare the two positions before she filed her discrimination claim.").

Davis did not give her new position a "try," but instead jumped to the conclusion that she could not do the job or that it would be too demanding on her physical limitations. Davis apparently assumed that the adjustable keyboard on her computer in the collections department would not meet her physical restrictions, even though she had never seen it and had never worked with it. Rather than go through training, learn about the position, and try to do her work on the adjustable keyboard provided to her, Davis simply resigned. Effectively, Davis made a personal choice to resign her employment with FMCC rather than to change work assignments. The Court finds, therefore, she was not constructively discharged.

The facts in this case are not like those in EEOC v. United Parcel Service, Inc., 249 F.3d 557, 563 (6th Cir. 2001), a case relied upon by Davis. In that case, the Plaintiff, who was employed at a UPS facility in Texas, developed a serious reaction to a local allergen and his doctor advised him to leave central Texas. Plaintiff requested a transfer, which was refused. Plaintiff was instructed instead to resign his position and reapply for a position in Ohio. He resigned, moved his family to northern

12

Kentucky, and applied for a job with UPS in Cincinnati. Upon receipt of the application, however, UPS informed Plaintiff he would not be rehired due to a company policy of not hiring former employees. Id. at 559.

In this case, Plaintiff has presented nothing which would show FMCC forced Davis to resign or that a reasonable person would have resigned under the circumstances. Davis articulates no reason why FMCC wanted her to resign. In fact, FMCC repeatedly made efforts to keep her employed when her position was eliminated and her department was downsized in 2001. In addition, FMCC relieved her of many of the regular duties of her job, designed special projects for her to do, and structured her mail room tasks to comply with her restrictions even as they became more and more limiting on her ability to perform the work. FMCC also gave her special hours to avoid traffic in traveling to and from work. FMCC purchased two special ergonomic chairs for her back problems and allowed her to wear sneakers. When her limited special duties in the mail room became too difficult, FMCC found a job for her in the collections department and provided a special adjustable keyboard and computer monitor so Davis could either sit or stand to perform her duties. And, even though her capabilities decreased, her salary remained the same.

Davis points to comments Ervin allegedly made to co-workers about her medical conditions, about her not being special, and about her being impaired because of her health condition. (Docket Entry No. 18 at 7). This handful of comments, even if made,

13

however, does not rise to a level making Davis' work environment intolerable. Compare, Weigold v. ABC Appliance Co., 105 Fed.Appx. 702, 708-09 (6th Cir. 2004)("rude and inappropriate" comments relating to Plaintiff's exercising of FMLA rights not sufficient to show constructive discharge); Drabant v. Thompson, 25 Fed.Appx. 294, 294-95 (6th Cir. 2001)(supervisor's several snide comments about Plaintiff in meetings, his refusal to share with her information concerning organization's ongoing reduction in force even though she was a department head, and his moving her from first to fourth on list of individuals who would assume his duties in his absence not sufficient to show retaliatory constructive discharge), with, Logan v. Denny's, Inc., 259 F.3d 558, 570-573 (6th Cir. 2001)(summary judgment on constructive discharge claim inappropriate where plaintiff was repeatedly subjected to racial and disparaging remarks, was demoted from server to busboy, and suffered a reduction in salary).

Viewing the facts in the light most favorable to Davis, this Court is unable to conclude a jury could find the evidence in this case paints a picture of discrimination or intolerable working conditions such that a reasonable person would have felt compelled to resign. Stated differently, the Court finds Davis has simply not shown that her "working environment became so intolerable that her resignation qualified as a fitting response." Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 2347, 159 L.Ed.2d 204 (2004). Whether viewed in accordance with cases discussing the THA or those discussing the ADA, it is clear that

14

Davis has not presented a jury issue on her claims for constructive discharge and failure to accommodate. Accordingly, summary judgment is appropriate on Davis' constructive discharge claim.

**B.     Failure to Accommodate**

As indicated, the THA is similar to the ADA. However, unlike the ADA which defines an individual with a disability as one "who, with or without reasonable accommodation can perform the essential functions" of the job, 42 U.S.C. § 1211(8), the THRA and THA contain no such language with respect to disabled individuals. This has lead some courts to conclude that the THA does not require employers to provide disabled workers with a reasonable accommodation, meaning that if it is determined that an accommodation is required in order for the employee to perform the functions of his or her job, the inquiry is closed under Tennessee law. See, Workman v. Frito-Lay, Inc., 165 F.3d 460, 468 n. 9 (6th Cir. 1999); Pruett v. Wal-Mart Stores, Inc., 1997 WL 729260 at *13 (Tenn. App. Nov. 25, 1998).

Even though the THA on its face contains no language requiring an employer to reasonably accommodate the disabilities of an employee, the Tennessee Supreme Court in Barnes, supra, held that

> the appropriate framework for analyzing a handicap discrimination claim under the THA and the THRA is as follows. First, a claimant must establish that he or she is a qualified individual with a disability. Next, the claimant must show that he or she can perform the essential functions of the job *with or without reasonable accommodation*. Finally, the claimant must show that he or she was subjected to an adverse employment action on the basis of a protected disability.

15

Id. 48 S.W.3d at 709-10 (italics added). While FMCC labels such language mere "dicta" and "not controlling precedent," (Docket Entry No. 9 at 11), since diversity jurisdiction is invoked, this Court must follow the decisional law of the Tennessee Supreme Court. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817 (1938)(law of state controls in diversity action "[a]nd whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern").

Assuming, in light of Barnes, that an employer must attempt to provide a reasonable accommodation under Tennessee law, it is clear that Davis still cannot prevail. As already indicated, FMCC provided numerous accommodations when Davis was in the mail room. In fact, Davis does not deny that every request for an accommodation was granted. To the extent that Davis became unable to perform her job duties because of her medical restrictions, FMCC could transfer Davis to a new position. See 42 U.S.C. § 12111(9)(B)("reasonable accommodation" may include "reassignment to a vacant position").

Moreover, as with her claim for constructive discharge, Davis' failure to try out the position in the collections department dooms her failure to accommodate claim. "The employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." Hankins v. The Gap, Inc., 84 F.3d 797, 802 (6th Cir. 1996).

Here, FMCC sought out and found a job in another department which would not have constituted a demotion. Instead of taking the job, or at least giving it a trial run, Davis chose to quit, apparently being of the view that her job in the mail room suited her just fine. However, "in order to prevail, [Plaintiff] must demonstrate a genuine issue of material with regard not only to her entitlement to her requested accommodation, but also the inadequacy of the offered alternatives." Trepka, supra 28 Fed.Appx. at 460. See also, Hankins v. The Gap, Inc., 84 F.3d 797, 802 (6th Cir. 1996)("a plaintiff's refusal to accept available reasonable accommodations precludes her from arguing that other accommodations should also have been provided").

Davis has not demonstrated that the offered alternatives would not accommodate her restrictions. She did not take the job in collections and has no idea based in fact as to whether the accommodations proposed by FMCC, such as the adjustable keyboard, would have been sufficient to enable her to perform her duties. As such, summary judgment is proper on her claim for failure to accommodate.

## V. CONCLUSION

On the basis of the foregoing, Defendant Ford Motor Credit Company's Motion for Summary Judgment (Docket Entry No. 7) will be granted and this case will be dismissed.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE